IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

USDC- GREENBELT
'26 APR 28 PM4:48

)
MOHAMMAD SHAKEELABBASI,          )
                                 )
        Petitioner,              )
                                 )         Civil Action No.: 1:23-cv-1670-LKG
v.                               )
                                 )         Dated:  April 28, 2026
WARDEN GREGORY WERNER,           )
                                 )
        Respondent.              )
                                 )

## MEMORANDUM OPINION

Petitioner Mohammad Shakeelabbasi, *pro se*, filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his 2019 conviction in the Circuit Court for Baltimore County, Maryland for first-degree murder.  ECF Nos. 1, 3.  Respondents filed an Answer arguing Shakeelabbasi's claims are procedurally defaulted or lack merit.  ECF No. 12.  For the reasons that follow, the Petition shall be **DENIED**, and a certificate of appealability shall not issue.

### I.    BACKGROUND

#### A.  Trial

On September 21, 2015, Shakeelabbasi was indicted in the Circuit Court for Baltimore County on one count of first-degree murder, one count of first-degree assault, and one count of wearing, carrying and transporting a dangerous weapon. ECF No. 12-1 at 6, 8. Shakeelabbasi was originally represented by James Dill from the Baltimore County public defender's office. *Id.* at 6. In January of 2017, private attorney Margaret Mead became Shakeelabbasi's counsel. *Id.* at 10.

After a series of hearings, Shakeelabbasi ultimately pled guilty to Count 1 of the indictment, first-degree murder. The Circuit Court held the first hearing on August 3, 2017, for the state to place the plea offer on the record. ECF No. 12-2. The terms of the plea were that Shakeelabbasi would plead guilty to first-degree murder, and the state would recommend a sentence of life imprisonment with all but 30 years suspended, followed by 5 years supervised probation. *Id.* at 3-4. After some discussion, it was determined that the defense would be

permitted to argue for a more lenient sentence and the state would not object to placement at Patuxent Institution. *Id.* Shakeelabbasi's counsel asked for additional time for Shakeelabbasi to consider the terms of the plea and a new hearing date was set. *Id.* at 8.

On August 29, 2017, a second hearing was held, and the state placed the same terms of the plea offer on the record. ECF No. 12-3. Shakeelabbasi's counsel conducted a colloquy with him during which she addressed the maximum penalties for first-degree murder and second-degree murder, should he be convicted of either crime at trial. *Id.* at 5-6. Shakeelabbasi rejected the plea offer even though he understood that the state would seek life without the possibility of parole. *Id.* at 9-10.

Shakeelabbasi accepted the plea offer during a third hearing on September 11, 2017. ECF 12-4. The state began by stating again on the record that the terms of the plea were that Shakeelabbasi would plead guilty to first-degree murder, the state would recommend a sentence of life imprisonment with all but 30 years suspended, followed by 5 years of suspended release, and the defense would be permitted to argue for a more lenient sentence. Also, the state would not object to placement at Patuxent Institution and Shakeelabbasi would agree to a pre-sentence psychological evaluation and investigation. *Id.* at 3. Shakeelabbasi's counsel conducted a colloquy with him that explained the elements of first-degree murder (*id.* at 15-16) and the rights he was waiving by pleading guilty and forgoing a jury trial. *Id.* at 5-15. Shakeelabbasi expressly indicated that no one forced or coerced him into pleading guilty. *Id.* at 6. During the plea hearing, the state offered the following factual basis for the plea:

> On August 18th of 2015, officers were dispatched to 1019 Southridge Road in Catonsville, Maryland in Baltimore County for [a] possible homicide. Upon arrival, they spoke with Ms. Asia Catune who advised she had called 911 because she had found her husband, Shakeel Ahmed Abassi[,] lying in bed unresponsive and covered in blood. Officers responded to the bedroom of Mr. Abassi and found him to be unresponsive with multiple puncture wounds to the neck and having lost large amount of blood. Also found in the home was [a] hammer with possible blood, vacuum with possible blood in the canister section, possible blood was found in the kitchen sink, the kitchen door, and clothes in the laundry room.
>
> Homicide detectives responded to the scene, and then interviewed Ms. Catune who advised that relatives contacted her to check on the victim after receiving [a] phone call from her son, the defendant, Muhammad Shakeelabbasi. A ping order was obtained for the defendant's phone, and he was located in Pennsylvania at the

Boomansville Service Plaza where he was arrested. Found on his person was [a] knife with possible blood and [a] cell phone.

Baltimore County homicide detectives, Grant and Anderson, then went to Pennsylvania to interview the defendant. After reading him his rights for Miranda and prompt presentment, the defendant confessed to killing the victim, his father. He advised that he began to think about killing his father [o]n March 19 of 2015. He described to the detectives how he had hit his father in the head with the hammer at first, but because that didn't kill him, he then stabbed him multiple times in the neck.

The defendant's laptop was seized and searched pursuant to [a] search and seizure warrant. Review of his Google searches indicated that the defendant had first Googled murder parole on June 27th, 2015, as well as on January the 1st of 2015, how to kill somebody easily. On 8/9/2015, an autopsy was performed on the victim by Assistant Medical Examiner, Dr. Donald Stash. Dr. Stash concluded that the cause of death was multiple blunt force injuries to the head and stab wounds to the neck. Dr. Stash further concluded that the manner of death was homicide. DNA analysis was conducted on the hammer and the knife and the blood on each was confirmed to be that of the victim.

The defendant caused the death of Shakeel Ahmed Abassi, and the killing was willful, deliberate and premeditated. If called to testify, witnesses would identify the defendant as the responsible party and all events did occur in Baltimore County.

*Id.* at 19-21. The Circuit Court asked Shakeelabbasi if he had any questions to which he responded, "no." *Id.* at 18. The Circuit Court then accepted Shakeelabbasi's plea and found him guilty of first-degree murder. *Id.* at 19.

On September 20, 2017, September 22, 2017, and September 25, 2018, Shakeelabbasi wrote letters to the Circuit Court judge stating that he wanted to withdraw his plea because his counsel made misrepresentations, he believed he was pleading to second-degree murder, and because his family begged him to plead guilty. ECF No. 12-1 at 16-24.

The Circuit Court held a hearing on Shakeelabbasi's request to withdraw his plea on November 8, 2018. ECF No. 12-5. The Petitioner's counsel, Margaret Mead, was not present, but her son, Brandon Mead, entered an appearance on behalf of Shakeelabbasi. *Id.* The state questioned whether it was appropriate to proceed without Margaret Mead's presence given Shakeelabbasi's allegations that she made misrepresentations about the plea. *Id.* at 7, 9. The trial court asked Shakeelabbasi if he wanted to proceed with the hearing with Brandon Mead

representing him and Shakeelabbasi agreed. *Id.* at 8. Mr. Mead permitted Shakeelabbasi to present his case to the trial court. *Id.* at 10-11.

Shakeelabbasi testified that he did not understand the details of the plea and felt pressured by his friends and family members to accept it. *Id.* at 12. He testified that he thought he was pleading guilty to second-degree murder and not first-degree murder and his sentence would be a maximum of thirty years. *Id.* at 13. He denied that he was told multiple times that he was pleading guilty to first-degree murder. *Id.* at 16. The Circuit Court denied Shakeelabbasi's motion, finding that Shakeelabbasi was never told he was pleading guilty to second-degree murder and that the plea was voluntary. *Id.* at 18-19.

On November 9, 2017, pursuant to the terms of the plea agreement, Dr. Stephen Siebert from the Office of the Court Psychiatrist conducted a pre-sentence psychological evaluation.[1] ECF No. 6-2 at 17-27. Dr. Siebert diagnosed Shakeelabbasi with "other specified schizophrenia and other psychotic disorder" (*id.* at 25) and competent to withdraw his plea. *Id.* at 26. Dr. Siebert also said that it was "beyond the scope of the current pre-sentence evaluation to address his mental state at the time of the offense… Shakeelabbasi likely had delusional beliefs about his father at the time of the offense." *Id.*

On January 16, 2018, Shakeelabbasi's retained counsel filed a motion for a competency evaluation. *Id.* at 11. The trial court ordered, pursuant to Md. Code of Criminal Procedural Article § 3-11, that Dr. Stephen Siebert, "determine whether the defendant is not competent to stand trial and whether the defendant is not criminally responsible…" ECF No. 6-2 at 30. On April 5, 2018, Dr. Siebert prepared a report, concluding that Shakeelabbasi required further evaluation by the Maryland Department of Health at Clifton T. Perkins Hospital Center. *Id.* at 29-38. Specifically, Dr. Siebert opined that "this case requires further evaluation with regard to the issue of criminal responsibility." *Id.* at 37.

Shakeelabbasi was admitted to Clifton T. Perkins Hospital Center on May 23, 2018, and evaluated by Dr. Ronald Means. *Id.* at 51-67. Dr. Means noted that Shakeelabbasi's public

---

[1] Although the three evaluations were included in attachments provided by Shakeelabassi, the Court may consider them in evaluating the merits of his claim because the state court record demonstrates that the postconviction court considered the reports when adjudicating his petition: "Further, neither of the doctors' evaluations contained support for Petitioner's claim that he was unable to enter his guilty plea knowingly, intelligently, or voluntarily. Therefore, even proffering the bald allegation that the Court did not consider the psychological reports, Petitioner did not demonstrate how the Court's failure to do so would have caused any prejudice." ECF No. 12-1 at 163.

defender requested a psychiatric exam, which was conducted by Dr. Neil Blumberg on June 22, 2016.[2] *Id.* at 62. Dr. Blumberg diagnosed Shakeelabbasi with post-traumatic stress disorder and unspecified depressive disorder. *Id.* at 62. Dr. Blumberg also opined that Shakeelabbasi did not meet the definition for a Guilty but Not Criminally Responsible plea, but he believed that Shakeelabbasi's mental state at the time of the offense was severely impaired. *Id.* at 62. Upon admission to Clifton T. Perkins Hospital Center, Shakeelabbasi denied hallucinations and denied that he was "NCR" (not criminally responsible). *Id.* at 63. Dr. Means diagnosed Shakeelabbasi with post-traumatic stress disorder and unspecified schizophrenia spectrum and other psychotic disorder, both at the time of the offense and at the time of the evaluation. *Id.* at 65. Dr. Means concluded, however, that Shakeelabbasi was competent to stand trial and was criminally responsible. *Id.* at 66-67.

On December 17, 2018, Shakeelabbasi wrote another letter to the judge, which stated that he fired his retained counsel, Margaret Mead, because she was ineffective in connection with his plea proceedings and requested a second hearing on his motion to withdraw his plea. *Id.* at 35-39. On January 15, 2019, the trial court held a hearing that was originally meant to be Shakeelabbasi's sentencing but became a hearing on his request to fire Margaret Mead. ECF No. 12-6. Shakeelabbasi said that Mead "induced my family and made false promises into taking this plea agreement." *Id.* at 4. The trial court reiterated to Shakeelabbasi that the terms of the plea were explained several times to him. *Id.* at 4-5. Because Mead was retained, the trial court permitted Shakeelabbasi to fire her. *Id.* at 10. Shakeelabbasi elected for the public defender's office to represent him for sentencing. *Id.* at 11.

On October 9, 2019, the trial court held a sentencing hearing and Shakeelabbasi was again represented by James Dill from the public defender's office. ECF No. 12-7. The trial court confirmed that he reviewed all the psychiatric evaluations. *Id.* at 4. The trial court sentenced Shakeelabbasi to the state's recommendation of life imprisonment with all but thirty years suspended, followed by 5 years of supervised release. *Id.* at 42-43.

**B. Direct Appeal**

Shakeelabbasi sought leave to appeal his conviction to the Appellate Court of Maryland. ECF No. 12-1 at 42-43, 79-92. He asserted that the trial court erred in denying his motion to

---

[2] Dr. Blumberg's report is not part of the state court record and was not submitted by Shakeelabbasi.

withdraw the plea. *Id.* The Appellate Court of Maryland denied leave on June 4, 2020, affirming his plea and conviction. *Id.* at 101-102.

### C. Petition for Postconviction Relief

Shakeelabbasi filed a *pro se* petition for postconviction relief with the circuit court on August 27, 2020, which was later amended by counsel. *Id.* at 104-135. He asserted nine claims:

(1) Petitioner alleges Trial Counsel coerced Petitioner into accepting the State's plea offer by manipulating his family, thus rendering Petitioner's plea involuntary.

(2) Petitioner alleges he unknowingly assented to the terms of the guilty plea because he believed he was pleading guilty to Second Degree Murder rather than First Degree Murder.

(3) Petitioner alleges the Court erred by denying his Motion to Withdraw his Guilty Plea without holding hearing on the matter.

(4) Petitioner alleges Trial Counsel rendered ineffective assistance of counsel by not presenting sufficient evidence for Petitioner to withdraw his guilty plea.

(5) Petitioner alleges the Court erred by accepting Petitioner's guilty plea and denying Petitioner's Motion to Withdraw his guilty plea because his pre-sentence psychological evaluations reveal that he was not mentally competent to enter into his guilty plea.

(6) Petitioner alleges the Court erred by not advising Petitioner of his parole eligibility and consequences under his First Degree Murder charge.

(7) Petitioner alleges he was not given the contemplated benefit which induced him to plead guilty, thus rendering Petitioner's plea unknowing.

(8) Petitioner alleges the Court erred by fraudulently binding itself to the plea.

(9) Petitioner alleges Trial Counsel rendered ineffective assistance of counsel for failure to file a Modification of Sentence.

*Id.* The postconviction court held a hearing on July 27, 2022, where Shakeelabbasi, his mother, and his public defender, James Dill, testified. ECF No. 12-8. On January 23, 2023, the postconviction court issued a written opinion denying Shakeelabbasi's petition. ECF No. 12-1 at 151-168.

Shakeelabbasi filed an application for leave to appeal the denial of his postconviction petition with the Appellate Court of Maryland. *Id.* at 170-187. He included all claims in his application except the claim contending his trial counsel was ineffective for failing to file a

6

motion for modification of sentence. *Id.* On May 24, 2023, the Appellate Court of Maryland denied Shakeelabbasi's application for leave to appeal. *Id.* at 191-192.

### D. Federal Habeas Petition

Shakeelabbasi filed his federal petition for habeas corpus relief, *pro se*, on June 20, 2023. ECF No. 1. He filed two supplements. ECF Nos. 3, 6. Due to the narrative format of Shakeelabbasi's petition, the Court ordered the Clerk of Court to send him a new form to submit a supplemental petition. ECF No. 5. Because Shakeelabbasi never responded to the Order, the Court will proceed to evaluate his petition based on the nine claims Shakeelabbasi presented in his postconviction petition.[3]

The Respondent answered the petition on September 21, 2023, arguing that Shakeelabbasi's claims should be dismissed because they lack merit, are procedurally defaulted, or are non-cognizable. ECF No. 12. Shakeelabbasi disputes that any of his claims are procedurally defaulted. ECF Nos. 9, 15.

### II.   STANDARD OF REVIEW

In analyzing Shakeelabbasi's petition for a writ of habeas corpus, the Court is bound by the standard of review for the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The Court may grant the writ on a claim adjudicated on the merits in a state court proceeding only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or involved an "unreasonable application of such law," or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1); 28 U.S.C. § 2254(d)(1)(2); *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Bell v. Cone*, 535 U.S. 685, 693–94 (2002); *Williams v. Taylor*, 529 U.S. 362, 379 (2000).

In assessing a petitioner's habeas claims, the district court looks to the opinion of "the last reasoned decision of a state court addressing the claim." *Allen v. Stephan*, 42 F.4th 223, 247 (4th Cir. 2022) (quoting *Woodfolk v. Maynard*, 857 F.3d 531, 544 (4th Cir. 2017)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a

---

[3] Shakeelabbasi's direct appeal claim is encompassed in Ground Five of his postconviction petition. ECF No. 12-1 at 115-117,162-164. To the extent Shakeelabbasi contends that the claims in his postconviction petition are not the claims he intends to raise in his federal habeas petition, as explained below, any claim that is not found in both his postconviction petition and application for leave to appeal his postconviction petition is procedurally defaulted.

conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 364–365. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the [petitioner's] case." *Id.* at 413.

In other words, to obtain relief on his petition, Shakeelabbasi must identify the "clearly established" legal principle on which he relies. To qualify as "clearly established," a principle must originate from an actual Supreme Court holding, not from its passing dicta. *See White v. Woodall*, 572 U.S. 415, 419 (2014). Shakeelabbasi also must describe this holding with specificity. *See Brown v. Davenport*, 596 U.S. 118 (2022). He cannot recite a holding at a "high level of generality." *Lopez v. Smith*, 574 U.S. 1, 6–8 (2014) (per curiam) (citation omitted); *Metrish v. Lancaster*, 569 U.S. 351, 367–68 (2013). Circuit precedent cannot turn "a general principle of Supreme Court jurisprudence into a specific legal rule" that has not been stated by the Supreme Court. *Lopez*, 574 U.S. at 7 (quoting *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013)).

If relying on the "unreasonable application" clause, Shakeelabbasi next must show that the state court engaged in an "unreasonable application" of clearly established law. Under this test, a federal court's belief that a state court committed an error when applying a legal principle to the facts of a case does not suffice. Rather, the federal district court must be able to describe the state court's application as "objectively unreasonable[.]" *White*, 572 U.S. at 419 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)). To warrant that description, a state court must have committed "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

Shakeelabbasi faces an additional hurdle if he alleges a trial court error that the state court subjected to harmless error review. Under these circumstances, a federal court cannot grant habeas relief without applying both the test outlined in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and the deferential review required by AEDPA. *Brown*, 596 U.S. 118. *Brecht* requires a state prisoner seeking to challenge his conviction in collateral federal proceedings to show that the error had a "substantial and injurious effect or influence" on the outcome of his trial. 507 U.S. at 623 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). A "substantial and injurious effect or influence" means "actual prejudice." *See id.* at 637–38. A "federal court must

8

*deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petitioner has cleared both tests." *Brown*, 596 U.S. 118 (emphasis in original). To succeed on any of his trial error claims, Shakeelabbasi must convince this federal court that there is grave doubt about his verdict *and* demonstrate that every fairminded jurist would agree that the error was prejudicial. *Id.* at 136.

As discussed in detail below, these standards foreclose Shakeelabbasi's claims.

## III.    PROCEDURAL DEFAULT

A petitioner seeking habeas relief in federal court generally must first exhaust the remedies available in state court. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See* 28 U.S.C. § 2254(c). For a person convicted of a criminal offense in Maryland, exhaustion may be accomplished either on direct appeal or in postconviction proceedings. To exhaust a claim on direct appeal in non-capital cases, a defendant must assert the claim in an appeal to the Maryland Court of Appeals and then to the Maryland Supreme Court by way of a petition for a writ of certiorari. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 12-201, 12-301. To exhaust a claim through postconviction proceedings, a defendant must assert the claim in a petition filed in the Circuit Court in which the inmate was convicted within 10 years of the date of sentencing. *See* Md. Code Ann., Crim. Proc. §§ 7-101– 7-103. After a decision on a postconviction petition, further review is available through an application for leave to appeal filed with the Court of Appeals. *Id.* § 7-109. If the Court of Appeals denies the application, there is no further review available, and the claim is exhausted. Md. Code Ann., Cts. & Jud. Proc. § 12-202.

When a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether by failing to raise the claim on direct appeal or in postconviction proceedings, or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note a timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise a claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (per curiam) (failure to raise a claim during post-conviction proceedings). A procedural default occurs when a habeas petitioner fails to exhaust such available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Breard v. Pruett*, 134

F.3d 615, 619 (4th Cir. 1998) (quoting *Coleman*, 501 U.S. at 735 n.1). Maryland law does not permit a second and successive state petition for postconviction relief. *See* Md. Code Ann., Crim. Proc. § 7-103(a).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show that either (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits or (2) that the failure to consider the claim on the merits would result in a miscarriage of justice, specifically, the conviction of one who is actually innocent. *See Murray*, 477 U.S. at 495-96; *Breard*, 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488). To demonstrate prejudice, the petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170-171 (1982); *see also Murray*, 477 U.S. at 494. Under the second exception, a petitioner may obtain review of procedurally defaulted claims if the case "falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Schlup v. Delo*, 513 U.S. 298, 314–15 (1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). Such cases are generally limited to those for which the petitioner can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496.

The only one of Shakeelabbasi's postconviction claims that was not included in his application for leave to appeal was Ground Nine, alleging that his trial counsel was ineffective for failing to file a motion for modification of sentence. ECF No. 12-1 at 170-187. For this reason, Ground Nine is procedurally defaulted. *See Pevia v. Bishop*, No. 16-1223, 2019 WL 3412649, at *13 (D. Md. July 26, 2019) ("The unexhausted claims are procedurally defaulted, as [Petitioner] failed to present them in his application for leave to appeal and the state courts would now find that he cannot assert those claims."). As discussed below, Ground Nine is also non-cognizable in federal habeas review.

Respondent argues that Shakeelabbasi's claim that his counsel was ineffective for failing to adequately advise him of the nature and consequences of his plea is procedurally defaulted because he never raised it with the state courts. ECF No. 12-1 at 53-58. Because the Court is

proceeding to evaluate the claims that Shakeelabbasi presented to the postconviction court and all except Ground Nine were included in his Application for Leave to Appeal, it is unnecessary for the Court to address the Respondent's procedural defense.

Shakeelabbasi argues that his procedural default should be excused through the actual innocence gateway. ECF No. 15 at 14-15. The Court will pretermit an actual innocence analysis because, as explained below, Ground Nine is non-cognizable in federal habeas review.

## IV.   DISCUSSION

### A. Grounds One, Two, Five, Six, And Seven

In Grounds One, Two, Five, Six, and Seven, Shakeelabbasi contends his plea was involuntary, because trial counsel coerced him into accepting the plea by manipulating his family, he unknowingly believed he was pleading guilty to second-degree murder, his presentence psychological evaluations reveal that he was not mentally competent to enter a guilty plea, the trial court failed to advise him of his parole eligibility, and he was not given the contemplated benefit of the plea.

Shakeelabbasi claimed that his plea was involuntary on these grounds in his postconviction petition. ECF No. 12-1 at 107-108, 111-112, 115-117, 118-119, 120-122. The postconviction court concluded that Shakeelabbasi was repeatedly made aware of the terms of plea (*id.* at 156, 159) and "[t]he record explicitly demonstrates that Petitioner confirmed he was entering into his guilty plea knowingly, intelligently, and voluntarily." *Id.* at 156. The postconviction court rejected Shakeelabbasi's claim that he was mentally incompetent to enter a plea, finding that the psychological evaluations do not support such a finding. *Id.* at 163. The postconviction court also rejected Shakeelabbasi's contention that his plea was involuntary because he was not made aware of the parole consequences of the plea, concluding that parole is a not a collateral consequence that renders a plea invalid. *Id.* at 164. Finally, the postconviction court found that Shakeelabbasi did receive the benefit of his bargain, as the state complied with the terms of the plea bargain. *Id.* at 165.

The Fourteenth Amendment's Due Process Clause guarantees that a guilty plea must be made voluntarily and intelligently with sufficient awareness of the relevant circumstances and likely consequences. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *see also Brady v. United States*, 397 U.S. 742, 748 (1970). "[A] plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and

11

most universally recognized requirement of due process.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). In *Brady*, the Supreme Court adopted the following standard for determining the voluntariness of a guilty plea:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady*, 397 U.S. at 755. The voluntariness of a guilty plea must be assessed in light of all the relevant circumstances surrounding the plea. *Id.* at 749. "[T]he representations of the defendant, his lawyer, and the prosecutor at [the guilty plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).

During the plea hearing on September 11, 2017, Shakeelabbasi was informed no fewer than five times that he was pleading guilty to first-degree murder. ECF No. 12-4 at 3, 12, 15, 19. The trial judge specifically asked his counsel to explain the elements of first-degree murder on the record. *Id.* at 15. He was also informed that the terms of the plea would be that the state would recommend a life sentence with all but thirty years suspended to be followed by 5 years supervised release, but he would be free to argue a more lenient sentence to the court. *Id.* at 3. Shakeelabbasi was informed that if he rejected the plea and proceeded to trial, he could receive a sentence of life without the possibility of parole if convicted. *Id.* at 16.

During the plea colloquy, Shakeelabbasi confirmed that he knew where he was and what he was doing. *Id.* at 6. He confirmed that he read and understood the charges against him and that no one had coerced him into entering a plea. *Id.* Shakeelabbasi specifically denied that any of his diagnoses or psychiatric treatment prevented him from knowingly entering a plea. *Id.* Shakeelabbasi confirmed that he understood he was waiving his rights including, *inter alia*, the right to a jury trial (*id.* at 6), right to have a trier of fact determine his guilt by a reasonable doubt (*id.* at 8), right to cross-examine the witnesses against him (*id.* at 9), right to present witnesses in his defense (*id.* at 8-9), and his right to take the stand in his own defense or remain silent (*id.* at 16-17). Shakeelabbasi was given the opportunity to ask any questions and he declined. *Id.* at 18.

Shakeelabbasi's claim in Ground One that family pressure rendered his plea involuntary cannot support habeas relief.  Shakeelabbasi's mother testified at the postconviction hearing that she visited him before the plea and, while crying, told him to take the plea because she did not want him to receive a life sentence. ECF No. 12-8 at 44. Shakeelabbasi also testified at the postconviction hearing that his mother visited him and described her demeanor as "crying" and "grief-stricken." *Id.* at 74. Shakeelabbasi testified that he would not have plead guilty if his mother had not visited him. *Id.* at 76. The emotional pleas by Shakeelabbasi's mother do not amount to coercion sufficient to render his plea involuntary. *See St. Clair v. Cox*, 312 F. Supp. 168, 170 (W.D. Va. 1970) (emotional entreatments by family insufficient to make plea involuntary); *Stano v. Dugger*, 921 F.2d 1125, 1142 (11th Cir. 1991) ("Unavoidable influence or pressure from sources such as codefendants, friends or family does not make a plea involuntary.") (citation omitted)); *Miles v. Dorsey*, 61 F.3d 1459, 1469 (10th Cir. 1995) ("The fact that [a defendant's] family urged [the defendant] to plead so that they would receive the leniency offered under the plea agreement does not lead to the conclusion that [the defendant's] no contest plea was involuntary.") (citations omitted)); *Iaea v. Sunn*, 800 F.2d 861, 867 (9th Cir. 1986) ("Mere advice or strong urging by third parties to plead guilty based on the strength of the state's case does not constitute undue coercion.") (citations omitted)).

The record does not support Shakeelabbasi's contention in Ground Two that he thought he was pleading guilty to second-degree murder. Noted above, he was advised at least five times on the record that the plea was first-degree murder and the postconviction court found that he was explicitly made aware of the plea's terms. *See* 28 U.S.C. 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Nor has Shakeelabbasi demonstrated that his claim in Ground Five has merit. To be sure, the Due Process Clause of the Fourteenth Amendment prohibits states from trying and convicting mentally incompetent defendants. *See Pate v. Robinson*, 383 U.S. 375, 384–86 (1966). The test for determining competence is whether "[a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding ... and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky*

*v. United States*, 362 U.S. 402, 402 (1960). The postconviction court determined that the record did not substantiate Shakeelabbasi's claim because the psychological evaluations found him to be mentally competent and the trial court considered these evaluations before entering a final disposition. ECF No. 12-1 at 163. Indeed, as noted above, Shakeelabbasi was evaluated several times and was never found incompetent to proceed. He was also specifically asked during the plea hearing, and he disavowed that any mental condition interfered with his ability to competently plead guilty. ECF No. 12-4 at 6. Shakeelabbasi has failed to show that the postconviction court's conclusion that he was competent to accept the plea was contrary to or an unreasonable application of federal law.

Next, Shakeelabbasi's claim in Ground Six, that his plea was involuntary because he was not advised of the parole consequences, was dismissed by the postconviction court because "parole eligibility is collateral consequence of guilty plea [and] the failure of [a] trial court to advise [a] defendant concerning parole eligibility does not render plea involuntary or invalid." ECF No. 12-1 at 164. This conclusion is not contrary to or an unreasonable application of federal law. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985) ("We have never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary"). In any event, the record shows that Shakeelabbasi was informed during the August 29, 2017, hearing that parole eligibility would be determined by the governor if the court imposed a life sentence with any number of suspended years. ECF No. 12-3 at 11.

Finally, in Ground Seven, Shakeelabbasi contends his plea was involuntary because he did not get the benefit of his plea bargain. ECF No. 12-1 at 120-122. "Plea bargains rest on contractual principles, and each party should receive the benefit of its bargain." *United States v. Ringling*, 988 F.2d 504, 506 (4th Cir. 1993). The postconviction court found that the state did, in fact, fulfill all terms of the plea. ECF No. 12-1 at 165. Particularly, the postconviction court noted that Shakeelabbasi received the benefit of avoiding life without the possibility of parole. *Id.* The record substantiates the postconviction court's conclusion and Shakeelabbasi has failed to show that its factual conclusion is incorrect by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Shakeelabbasi has failed to demonstrate that the postconviction court's conclusion that none of the proffered reasons rendered his plea involuntary was contrary to or an unreasonable

application of federal law. Grounds One, Two, Five, Six, and Seven are without merit and are dismissed.

### B. Ground Three

In Ground Three, Shakeelabbasi contends that the trial court erred by denying his Motion to Withdraw his Guilty Plea without holding a hearing. It appears that Shakeelabbasi is complaining about an additional motion that he filed after the trial court held the November 8, 2018, hearing. ECF No. 12-1 at 44-59.

There is no federal or constitutional right to withdraw a guilty plea, nor is there a federal or constitutional right to an evidentiary hearing on a motion to withdraw a guilty plea. *Hines v. Miller*, 318 F.3d 157, 162 (2d Cir. 2003); *Armstrong v. Wainwright*, No. 19-3446, 2019 WL 5874623, at *2 (6th Cir. Oct. 8, 2019). At most, Shakeelabbasi complains that the trial court has failed to comply with state law procedures. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Ground Three is non-cognizable in federal habeas review and is dismissed.

### C. Ground Four

In Ground Four, Shakeelabbasi contends that his plea counsel was ineffective for not presenting sufficient evidence so that he could successfully withdraw his plea and that his plea counsel was ineffective for coercing him into accepting the plea. ECF No. 12-1 at 113-114; ECF No. 12-8 at 17. The postconviction court found trial counsel's performance was not deficient concluding, "this Court is not convinced that Trial Counsel's advice to Petitioner's mother that Petitioner should accept the plea falls below an objective standard of reasonableness" and that Shakeelabbasi could not demonstrate prejudice because "Petitioner voluntarily entered into his guilty plea not his mother nor his Trial Counsel." ECF No. 12-1 at 162.

The Sixth Amendment to the Constitution guarantees a criminal defendant the right to effective assistance of competent counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, 580 U.S. 100, 118 (2017); *United States v. Ductan*, 800 F.3d 642, 648 (4th Cir. 2015). To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687–88; *see Williams (Terry)*, 529 U.S. at 390; *United States v. Sutherland*, 103 F.4th 200, 207-08 (4th Cir. 2024); *United States v. Winbush*, 922 F.3d 227, 229

15

(4th Cir. 2019); *United States v. Hall*, 771 F. App'x 226, 227 (4th Cir. 2019) (per curiam); *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017); *United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017).

First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 580 U.S. at 118; *Chaidez v. United States*, 568 U.S. 342, 348 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Winbush*, 922 F.3d at 229. The petitioner must prove his claim by a preponderance of the evidence. *United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021); *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010).

With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms." *Strickland*, 466 U.S. at 688; *see Harrington*, 562 U.S. at 104; *Sutherland*, 103 F.4th at 207–08; *United States v. Richardson*, 820 F. App'x 225, 225 (4th Cir. 2020); *Powell*, 850 F.3d at 149; *Hall*, 771 F. App'x at 227. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

The Supreme Court recently reiterated that the "first prong sets a high bar." *Buck*, 580 U.S. at 118. Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Id.* (citation omitted). The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669. Judicial scrutiny of counsel's performance must be "highly deferential" and not based on hindsight. *Stokes v. Stirling*, 10 F.4th 236, 246 (4th Cir. 2021) (citing *Strickland*, 466 U.S. at 689).

To satisfy the high bar, the burden is on the petitioner to establish "'that counsel made errors so serious that his 'counsel' was not functioning as the 'counsel' guaranteed by the Sixth Amendment.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687). Notably, "the *Strickland* standard must be applied with scrupulous care," because "the standard for judging counsel's representation is a most deferential one." *Harrington*, 562 U.S. at 105; *see also United*

*States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019). Indeed, "[k]eenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence v. Branker*, 517 F.3d 700, 708 (4th Cir. 2008) (quoting *Strickland*, 466 U.S. at 689); *see Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Harrington*, 562 U.S. at 104; *Richardson*, 820 F. App'x at 225–26; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015). Therefore, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689.

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 580 U.S. at 119. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 694; *see Thornell v. Jones*, 602 U.S. 154, 155 (2024) (death penalty case).

A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Strickland*, 466 U.S. at 696. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. A petitioner is not entitled to postconviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

In the context of plea proceedings, the performance standard remains the same, and to show prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The Court emphasized that this inquiry should be conducted "objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" *Id.* at 60 (quoting *Strickland*, 466 U.S. at 695). Thus, a defendant "must convince the court that a decision to reject

the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in *Strickland*, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

To succeed on an ineffective assistance of counsel claim in this context, Shakeelabbasi must show that it would have been objectively rational for him to have rejected the plea deal in the absence of the alleged errors by his counsel. Here, Shakeelabbasi knew he was facing a maximum sentence exposure of life without the possibility of parole if he proceeded to trial instead of accepting the plea deal. ECF No. 12-1 at 87. At the postconviction hearing, Shakeelabbasi acknowledged that he confessed to his father's murder (*id.* at 84), was found in possession of the murder weapon (*id.*), and cleaned up the crime scene. *Id.* at 86. Shakeelabbasi denied that he committed the crime but acknowledged that the state had evidence from his laptop that showed searches on ways to kill. *Id.* at 86-87.

Facing evidence of this strength and a sentence of life without the possibility of parole, Shakeelabbasi has identified no error by his counsel, without which, it would have been objectively rational to reject the state's plea agreement. As such, the state court's rejection of Ground Four is neither contrary to nor an unreasonable application of federal law. Claim Four is without merit and is dismissed.

### D. Ground Eight

In Ground Eight, Shakeelabbasi contends that the trial court fraudulently bound itself to the plea because it failed to adhere to a self-imposed deadline. The record reflects that at the hearings on August 3, 2017, and August 29, 2017, the state wanted Shakeelabbasi to either accept the plea on August 29, 2017, or the case would proceed to trial. ECF No. 12-2 at 3; ECF No. 12-3 at 3. Yet, on September 11, 2017, the state agreed to the terms of the plea offer. ECF

No. 12-4. The postconviction court denied relief on these grounds, finding that "there's no legal basis to support this contention."

Noted above, "[p]lea bargains rest on contractual principles…" *Ringling*, 988 F.2d at 506. The state was free to offer the terms of the agreement to Shakeelabbasi on September 11, 2017, and, as discussed above, Shakeelabbasi knowingly and voluntarily accepted those terms. To the extent Shakeelabbasi contends the trial court failed to comply with any state procedures, such a claim is non-cognizable in federal habeas review. *See Estelle*, 502 U.S. at 67–68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Ground Eight lacks merit and is dismissed.

### E.  Ground Nine

In Ground Nine, Shakeelabbasi contends that trial counsel was ineffective for failing to file a motion for modification of sentence. Discussed above, Ground Nine is procedurally defaulted, but it also is non-cognizable in federal habeas review.

The postconviction court denied the claim, finding that "Petitioner offers no evidence that he ever requested a Motion for Modification be filed, despite being advised of his right to such on the record." ECF No. 12-1 at 167. In support of habeas relief, Shakeelabbasi offers an October 28, 2019, letter from counsel which states, "within the next 60 days I will be asking that Judge Alexander hold a motion for modification sub curia." ECF No. 17-1. That said, there is no indication that this letter was ever presented to the postconviction court, so this Court is prohibited from considering it in evaluating the merits of Ground Nine. *See Cullen v. Pinholster*, 563 U.S. 170, 185 (2011) ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court.").

Even if the Court could consider plea counsel's October 28, 2019, letter in evaluating the merits of Ground Nine, it would nonetheless be dismissed as non-cognizable in federal habeas review. A motion for modification of sentence is considered collateral review in Maryland. *Mitchell v. Green*, 922 F.3d 187, 195 (4th Cir. 2019) (holding that a motion for modification under Maryland Rule 4-345 is "collateral review.") And "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C.A. § 2254(i).

Ground Nine is procedurally defaulted and non-cognizable in federal habeas review and is dismissed.

## V.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because the accompanying Order is a final order adverse to the applicant, 28 U.S.C. § 2253(c)(1) requires issuance of a certificate of appealability before an appeal can proceed.

A certificate of appealability may issue if the prisoner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner may satisfy the standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Shakeelabbasi has not made the requisite showing. Accordingly, the Court declines to issue a certificate of appealability. Shakeelabbasi may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003).

## VI.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Shakeelabbasi's petition for writ of habeas corpus. A separate Order shall follow.

4-28-26
Date

LYDIA KAY GRIGGSBY
United States District Judge